James T. McMillen, Corpus Christi, TX, for debtor Donna Sue Luce Carlan.

Marvin J. Wanner, Corpus Christi, TX, for GMAC.

**In re Donna Sue Luce CARLAN, Debtor.**

**No. 93–20818–C–13.**

United States Bankruptcy Court,
S.D. Texas,
Corpus Christi Division.

Aug. 23, 1993.

**MEMORANDUM OPINION ON OBJECTION OF DEBTOR TO CLAIM OF GMAC**

RICHARD S. SCHMIDT, Bankruptcy Judge.

On this day came on for consideration the Objection of the Debtor, Donna Sue Luce Carlan (the "Debtor") to the proof of claim filed by General Motors Acceptance Corporation ("GMAC"). The Court, having heard the evidence and arguments of counsel, and having reviewed the pleadings and briefs on file herein, and the relevant case law, finds that it has jurisdiction pursuant to 28 U.S.C. § 1334, that this is a core proceeding as defined in 28 U.S.C. § 157,

and makes the following findings of fact and conclusions of law:

## BACKGROUND

Debtor purchased a 1989 Chevrolet S10 Blazer for $17,200.79, on January 29, 1990, and financed $17,123.82 of the purchase price with GMAC, via a Retail Installment Sale Contract. GMAC duly perfected its lien on the vehicle. The Debtor filed her Chapter 13 Petition on April 13, 1993. The balance due GMAC according to its proof of claim is $8,381.14.

The Debtor's Chapter 13 Plan proposes to pay GMAC $6,025.00 plus interest at the rate of 8% per annum for 58 months as its secured claim, with the balance to be paid as an unsecured claim. Unsecured creditors in this case will receive 6% of their claims, without interest, over the life of the plan. The Debtor objected to GMAC's proof of claim, alleging that GMAC is secured only to the extent of the NADA wholesale value of the vehicle, $6,050.00. GMAC argues that the NADA retail value of $7,675.00 is the appropriate value of its secured claim. The Debtor's Chapter 13 Plan was confirmed subject to resolution of the valuation question.

## DISCUSSION

The issue before the Court is the valuation of vehicles pursuant to 11 U.S.C. § 506(a) in a chapter 13 cramdown context. Not surprisingly, both parties cite ample case law supporting their position. None of the cases, however, come from the Southern District of Texas Bankruptcy Court, or a District Court in the Fifth Circuit, or the Fifth Circuit itself. This Court is, therefore, compelled to interpret the statute. 11 U.S.C. § 506(a) provides, in part, as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The legislative history for § 506(a) instructs that "while courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property." Sen. Rep. 95–989.

■ The Debtors rely on *In re Mitchell*, 954 F.2d 557 (9th Cir.1992), *cert. denied* — U.S. ——, 113 S.Ct. 303, 121 L.Ed.2d 226 (1992). This Court disagrees with the *Mitchell* opinion's reasoning because it goes against the rules of statutory interpretation which instruct that a statute should be construed according to its plain meaning, *Patterson v. Shumate*, — U.S. ——, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992), and to avoid rendering any part inoperative, *United States v. Nordic Village, Inc.*, — U.S. ——, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992). To adopt *Mitchell's* reasoning would render inoperative that portion of § 506(a) which instructs the Court to look to the proposed distribution or use of the collateral. *Mitchell* relies on the first part of § 506(a) and holds that the court should look at the value of the creditor's interest in the collateral, which is only the right to foreclose on the collateral. The *Mitchell* opinion reasons that the creditor will only receive liquidation value for the collateral and, therefore, the wholesale value of the vehicle is the appropriate value. The *Mitchell* reasoning ignores the second part of § 506(a), which clearly instructs courts to look to the debtor's proposed use of the collateral. Here, the Debtor proposes to keep the vehicle, not to liquidate it, so the value must be something above wholesale.

■ GMAC relies on *In re Green*, 151 B.R. 501 (Bankr.D.Minn.1993) and cases cited therein, including *In re Bergh*, 141 B.R. 409 (Bankr.D.Minn.1992), and *In re Bal-*

*bus,* 933 F.2d 246 (4th Cir.1991). Those cases tend to look exclusively to the debtor's proposed use (keeping the vehicle), and reason that the retail value is appropriate because that is the amount the debtor would spend to replace the vehicle. This Court also must disagree with that reasoning. Common sense and experience tells the Court that no car is worth what was paid for it once it is "driven off the lot." Moreover, purchasers rarely pay retail or "sticker price" for a car.

The Bankruptcy Court is a court of equity. Neither the Debtor nor GMAC should receive a windfall from this case. Accordingly, this Court finds that the proper value of a vehicle in this context is somewhere between wholesale and retail, to be determined on a case-by-case basis. Here, the Court finds that the value of the vehicle is $6,850.00.

It is therefore ORDERED that GMAC holds a secured claim in the amount of $6,850.00 and an unsecured claim in the amount of $1,531.14.

It is further ORDERED that the Debtor shall amend her Chapter 13 Plan to coincide with this Order.